IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TINNEKKIA MARIE WILLIAMS, | CV 20-49-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Tinnekkia Marie Williams ("Williams") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Doc. 2.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 9.)

Presently before the Court is Williams' motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 14.) The motion is fully briefed and ripe for the Court's review. (Docs. 14, 18, 19.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds the decision should be **AFFIRMED**.

## I.    Procedural Background

Williams completed her application for DIB on February 16, 2016.  (A.R. 17, 224-27.)  A hearing was held on October 16, 2018, in Billings, Montana, before Administrative Law Judge Michael A. Kilroy (the "ALJ").  (A.R. 17, 38.)  On December 27, 2018, the ALJ issued a written decision finding Williams not disabled.  (A.R. 17-31.)  Williams requested review of the decision, and on February 14, 2020, the Appeals Council denied Williams' request.  (A.R. 5-10.)  Thereafter, Williams filed the instant action.

## II.    Legal Standards

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.     Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the

claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Williams' claim.  At step one, the ALJ found that Williams had not engaged in substantial gainful activity since her amended alleged onset date of June 1, 2016. (A.R. 19, 240-41.)  At step two, the ALJ found Williams had the following severe impairments: obesity; degenerative disease of the spine; myalgias (alternatively diagnosed as fibromyalgia and polymyalgia rheumatica); depressive disorder; and hemiplegic migraine headaches.  (A.R. 20.)  At step three, the ALJ found that Williams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (A.R. 20-22.)

Before considering step four, the ALJ determined Williams had the residual functional capacity ("RFC") to:

perform sedentary work as defined in 20 CFR 404.1567(a) except she can be on her feet a total of 4-6 hours of an 8-hour workday.  She can sit 8 hours of an 8-hour workday.  She can lift 20 pounds occasionally and 10 pounds

frequently.  She can never climb ladders, ropes, or scaffolds.  She can perform all other postural activities (climb ramps and stairs, balance, stoop, kneel, crouch, or crawl) occasionally.  She must avoid concentrated exposure to extreme cold and to vibrations.  She would be unable to perform detailed or complex work.  She could perform simple tasks and have only occasional new learning.

(A.R. 22-23.)

At step four, the ALJ found that Williams was unable to perform any past relevant work.  (A.R. 29.)  Finally, at step five, the ALJ found that based on Williams' age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform, such as a document preparer or touch up screener/assembler.  (A.R. 30.)  Accordingly, the ALJ found Williams not disabled.  (A.R. 31.)

## IV.   Discussion

Williams presents the following issues for review,[1] whether the ALJ: (1) properly discounted her subjective symptom testimony; (2) properly evaluated the medical opinions of psychologist Lynn Goehring, MA, and treating counselor Sherri Thompson; (3) failed to consider the frequency of her treatment; and (4)

---

[1] Williams' "statement of issues presented for review" is difficult to reconcile with the arguments made in her briefing.  The issues are not restated in her argument, but instead, various arguments are interspersed throughout her brief.  Accordingly, the Court has restated the issues as articulated here to coincide with arguments presented in Williams' brief.

failed to incorporate all of her impairments into the vocational expert's hypothetical.[2]  The Court will address each in turn.

### A.    Williams' Subjective Symptom Testimony

Williams argues that the ALJ improperly discounted her subjective symptom testimony relating to the intensity, persistence, and functional limiting effects of her impairments.  The Commissioner argues that the ALJ reasonably evaluated Williams' subjective complaints.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the

---

[2] Williams also suggests in passing that the ALJ incorrectly determined Williams "did not meet any Listing" or "the appropriate B and C criteria."  (Doc. 14 at 6.)  But Williams does not present this issue in her statement of issues and makes no further argument in her brief.  Moreover, the ALJ extensively discussed the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526, as well as the "paragraph B and C" criteria.  (*See* A.R. 20-22.)  The claimant bears the burden to establish that she satisfies the required findings of the Listing of Impairments.  *Burch*, 400 F.3d at 683.  Because Williams only makes a cursory reference to this issue in her brief with no accompanying argument, the Court finds that she has not sufficiently placed the ALJ's consideration of the Listings at issue.

claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the lack of objective medical evidence into consideration.  *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ found that Williams' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (A.R. 25.)  In making this determination the ALJ first discussed a Function Report Williams completed in 2016. (A.R. 23-24.)  The ALJ concluded that Williams' statements in the report were "not entirely internally consistent, and [were] certainly inconsistent with the claimant returning to work" at this time. (A.R. 24.)  In support of this finding, the ALJ stated that Williams began a "new job doing surveillance work in a casino" in June 2016 and found that "[e]ven if she did not persist at the new job, she had enough confidence in her capacities to start it, and keeping it for four months is inconsistent with her allegations of debility." (*Id.*)

Based on the Court's review of the record, however, it appears that Williams worked at this job in the summer of 2018, not 2016. (*See* A.R. 239.)  At the October 2018 hearing, Williams testified that she worked as a surveillance agent for a casino, "[t]his past summer," which would be the summer of 2018. (A.R. 56-57.)  The ALJ also correctly noted earlier in his decision that Williams had done surveillance work in a casino in May through September 2018. (A.R. 19.)  Moreover, Williams testified that she resigned from this job because she was

missing too much work due to frequent migraines.[3]  (A.R. 58-59.)  While an ALJ may consider work activity in determining whether a claimant is disabled, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020), a work attempt alone is not necessarily a clear and convincing reason for rejecting a claimant's subjective pain and symptom testimony, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). This is particularly true here where Williams testified she could not continue to work at the casino due to her migraines, and it appears the ALJ was also mistaken as to when Williams returned to work.  Thus, it appears the ALJ erroneously relied on Williams' work attempt at the casino in 2018 to reject the statements in Williams' 2016 report.  As discussed below, however, because the ALJ provided other clear and convincing reasons for rejecting Williams' subjective testimony about the severity of her symptoms, this error is harmless.

The ALJ also examined Williams' 2018 hearing testimony and found "[t]he severity of [Williams'] problems described in her testimony is not matched in her clinical records."[4]  (A.R. 24.)  An ALJ may take objective medical evidence, or the

---

[3] Before her work attempt at the casino in 2018, Williams' last job was as a community health worker with the Great Plains Tribal Chairmen's Health Board. (A.R. 59.)  At the hearing, she testified that she resigned from this job in May 2016, which was prior to her amended alleged onset date of June 1, 2016.  (A.R. 59-60, 240.)

[4] Williams takes issue with the ALJ's statement that "[m]edication seeking behaviors and medication overuse (she had providers in three cities) may have contributed to her problems."  (A.R. 24.)  The ALJ cites to a treatment note that

lack thereof, into consideration when assessing credibility, *Baston*, 359 F.3d at 1196, and there is support for the ALJ's conclusions in the record.  For example, the ALJ noted Williams testified that she had episodes of depression in the time period of March 2018, during which she stayed on the couch for weeks to months. But these episodes are not documented in her treatment notes during this time period.  (A.R. 24, 71-72.)  The ALJ further commented that various medical providers noted that Williams' reported migraine symptoms may at times be exaggerated.  (A.R. 24-25.)  The ALJ's observations are supported by the evidence in the record.  (*See* A.R. 598 ("She frequently talked in generalities regarding her medical status, and it is uncertain to the undersigned if she is over-reacting to her medical problems or not. . . .  She is suffering from migraine headaches and a rare condition which she describes as a genetic mutation that eventually results in paralysis and death."); 677 ("She also suffers from severe migraines, which she explained could kill her some day as they could cause strokes to her brain."); 767 ("She is stuttering and slurring her words, but only intermittently, and I believe that

---

provides, "[t]he patient used to be a very difficult chronic pain patient on exuberant amount of opiates.  She recently moved to Billings Montana and during that time was evaluated by multiple subspecialists resulting in her being taken off of all opiate medications."  (A.R. 915.)  The ALJ noted, however, that when opiates were reduced, Williams' condition improved.  (A.R. 24, 915.)  The ALJ does not mention opiate use again in his decision, and it does not appear he used this to discredit Williams' testimony.

this too is exaggerated and dramatized. . . . On exam she does have a slight droop of the right eye, but I do believe this is slightly exaggerated by patient.").)

Next, the ALJ found that Williams' testimony that her migraines occasionally require emergency room visits, and that it takes her several days to recuperate from her migraines, to be inconsistent with her treatment notes that largely documented significant improvement after she was treated in the hospital. (A.R. 24-25, 76-79.)  This is also supported by the evidence in the record.  (*See* A.R. 557 ("[S]he reports relief of symptoms w/ above interventions and will f/u as needed."); 743 ("With regards to her migraine headache, she was given Reglan, Benadryl, and Decadron IM with near complete resolution of this headache."); 830 ("Migraine headache.  Improved with administration of migraine cocktail and normal saline bolus.").)

Last, the ALJ found Williams' statements about her limiting symptoms were inconsistent with her ability to help care for family members and her work attempt in 2018.  (A.R. 24.)  The ALJ determined these activities were not consistent with her characterization "as someone who is unable to function at even a subsistence level without help."  (*Id.*)  These observations are legitimate reasons for discounting a claimant's testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

Accordingly, although this Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretations of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing.").

The Court therefore finds the ALJ's credibility determination is properly supported by specific, clear and convincing reasons.

### B.     The ALJ's Evaluation of Medical Opinion Evidence

Williams next contends that the ALJ failed to give proper weight to the opinions of psychologist Lynn Goehring, MA, and treating counselor Sherri Thompson.[5]  The Commissioner counters that the ALJ properly considered the medical evidence.

---

[5] Williams also asserts the ALJ failed to give proper weight to the opinions of her treating physicians regarding her back and fibromyalgia impairments.  (Doc. 14 at 32-33.)  Williams cites to her testimony and various facts in her brief that refer to miscellaneous treatment notes, but she fails to identify the providers or the opinions that were allegedly improperly discounted. The Court, therefore, does not find that Williams has sufficiently placed the ALJ's consideration of any specific treating physician's opinion, regarding back or fibromyalgia limitations, at issue. Additionally, the ALJ's decision indicates he considered Williams' testimony regarding her back and fibromyalgia symptoms.  (A.R. 26-27.)  Indeed, the ALJ accounted for Williams' back limitations in the RFC by placing restrictions on her ability to lift and carry, and time spent standing.  (A.R. 22, 27.)  Furthermore, the ALJ found Williams had severe impairments of degenerative disc disease of the

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.*

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id. See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

---

spine and myalgias. (A.R. 20.) Thus, the Court finds the ALJ did not err in considering medical evidence relative to Williams' back or fibromyalgia.

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion.[6] *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

---

[6] Because Williams' claim was filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply. 20 C.F.R. § 404.1520c.

Opinions of treating and examining physicians may only be rejected under certain circumstances.  *Lester*, 81 F.3d at 830.  To discount an uncontradicted opinion of a treating or examining physician, the ALJ must provide "'clear and convincing' reasons."  *Id.* (internal citation omitted).  To discount the controverted opinion of either, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Id.* (internal citation omitted). *See also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick*, 157 F.3d at 725.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

Williams argues the ALJ improperly provided little weight to the opinions of psychologist Lynn Goehring and counselor Sherri Thompson.  It does not appear, however, that either Goehring or Thompson addressed Williams' functional limitations or her ability to work due to her mental health limitations.  The Court will address each in turn.

Williams alleges generally that the ALJ erred in giving Goehring's opinion little weight but makes no argument as to how the ALJ inappropriately evaluated

16

her opinion.  Williams was referred to Goehring for a psychological examination in 2016.  (A.R. 596.)  In his decision, the ALJ acknowledged that Goehring found Williams "displayed significant symptoms of depression," but he gave the exam little weight as opinion evidence because it was a one-time examination relying primarily on Williams' subjective symptoms and it did not address Williams' functional limitations.  (A.R. 28, 598.)

In making this determination, the ALJ first found that some of Williams' statements to Goehring, such as that she suffers from "a rare condition . . . that eventually results in paralysis and death," are not supported by the medical record, and noted that Goehring was "uncertain [whether Williams was] over-reacting to her medical problems or not."  (A.R. 28, 598.)  Next, while Goehring's evaluation found Williams to have significant depression, she also observed that Williams did not exhibit problems with concentration, behavior, or memory impairment, and concluded that she could manage important aspects of her life, such as her finances.  (A.R. 598-99.)  Last, the ALJ noted that Goehring's report does not address Williams' functional capacity or ability to work.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's]

conclusions.").  In sum, the ALJ did not err in assigning little weight to Goehring's report.

Williams similarly argues that the ALJ erred in considering counselor, Sherri Thompson's opinion.  Again, beyond citing to facts that document various treatment encounters, Williams makes no argument as to how the ALJ erred in considering Thompson's treatment.

Thompson is a licensed professional counselor ("LPC").  At the time Williams' claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors.  20 C.F.R. 416.913(a), (d) (amended March 27, 2017). *See also Leon v. Berryhill*, 2017 WL 7051119, at *3 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions).  LPC's are not considered "acceptable medical sources."  Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45593-03, 45594, 2006 WL 2263437.  Opinions of "other sources," are not entitled to the same deference as "acceptable medical sources."  *Molina*, 674 F.3d at 1111. The ALJ may discount opinions from "other sources" as long as the ALJ gives "germane reasons" for doing so.  *Id.*  The Court finds the ALJ did so here.

18

In 2017, Thompson submitted a letter summarizing her counseling of Williams for approximately six weeks.[7] (A.R. 677.)  The statement largely summarizes Williams' self-reporting and the focus of her counseling sessions. (*Id.*)  Like Goehring's report, Thompson's statement does not discuss Williams' functional capabilities.  The ALJ gave the letter little weight because is "does not appear to be intended to address function-by-function limitations related to work capacity.  It is not very helpful in assessing the claimant's residual functional capacity because it mostly summarizes subjective complaints about medical problems, which the counselor has not treated or evaluates [sic]." (A.R. 28.)  The ALJ characterization of Thompson's statement is accurate.  The letter did not provide any specific limitations or opinions regarding Williams' ability to work. Thus, the ALJ did not err in assigning the letter little weight.

In sum, the Court finds the ALJ did not err in considering Goehring's report or Thompson's statement.

### C.    Frequency of Treatment

Williams also argues the ALJ improperly ignored Social Security Ruling ("SSR") 96-8p, which requires consideration of the effects of the claimant's medical treatment on the RFC by incorporating the frequency and duration of

---

[7] The A.R. also contains Thompson's treatment notes, however, the copies of the notes provided are illegible.  (*See* A.R. 953-94.)

treatment, and SSR 16-3p, which also requires consideration of treatment for pain and other symptoms.

SSRs 96-8p and 16-3p require the ALJ to consider the effects of medical treatment in developing the RFC.  SSR 96-8p, 61 Fed. Reg. 34474-01, 1996 WL 362207; SSR 16-3p, 2017 WL 5180304.  SSR 96-8p requires the RFC assessment to be based on all relevant evidence, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  SSR 96-8p, 61 Fed. Reg. at 34477.  SSR 16-3p relates more specifically to symptom evaluation, and requires that treatments received for pain or other symptoms be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  SSR 16-3p, 2017 WL 5180304, at *8.

An ALJ's failure to consider the effect of a claimant's treatment needs may constitute reversible error.  *See Bourcier v. Saul*, 856 Fed. App'x 687, 691 (9th Cir. 2021); *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021); *Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022); *Chase v. Saul*, 2022 WL 819680, at *7-8 (D. Mont. Mar. 18, 2022); *Mariah v. Saul*, 2021 WL 1660947, at *8 (D. Mont. Apr. 28, 2021).

Here, Williams simply notes the number of medical visits she had in the years 2016, 2017, and 2018, and concludes that on average she would miss

approximately two days of work per month.  Williams does not, however, cite any medical opinions in the record stating that she would be absent from work for any specific amount of time due to her medical visits.  Moreover, there is no evidence to established she would be required to attend her medical appointments during work hours, that her appointments would cause her to miss an entire day of work, or that the need, frequency, and duration of her treatment would continue at the same level.

Williams also appears to argue the ALJ did not consider the frequency of her migraine headaches, but her migraines and the need for treatment were specifically addressed by the ALJ.  The ALJ noted her "migraine headaches needed medical intervention at times, but these were not so frequent that they would preclude work."  (A.R. 25.)  After review of Williams' treatment notes, the ALJ determined that from 2016 to 2018, her migraine symptoms were episodic and that most of the records were from 2016.  (*Id.*)  He also observed that when Williams did go to the hospital due to her migraines, her symptoms consistently improved or resolved with treatment.  This is supported by the record.  (*See* A.R. 557, 564, 624, 743, 830, 853.)  Last, although Williams sought treatment for increased headaches in 2018, the ALJ pointed out she returned to work for several months in the summer of 2018.  (A.R. 25.)  At the hearing, Williams testified that she stopped working at this job because she was missing too much time due to her migraines.  (A.R. 59.)

21

The ALJ acknowledged this but determined "she did not have episodes frequently enough to cause significant disruption in work capacity." (A.R. 25-26.) In addition, the ALJ accounted for Williams' headaches in the RFC by "[l]imit[ing] physical demands and environmental exposures." (A.R. 26.)

Nevertheless, to the extent the ALJ erred in failing to specifically consider treatment needs, any such error was harmless. "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'" *Mariah*, 2021 WL 1660947, at *8 (quoting *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)). Based on the Court's review of the record, Williams sought medical treatment for migraines approximately six times in 2016, four times in 2017, and six times in 2018. In her sparse references to frequency of treatment, Williams does not cite to any evidence in the record that this absence rate would prevent competitive employment. Moreover, Williams does not cite to any medical source opinion that she would frequently miss work due to medical appointments or treatment needs. She also does not offer any argument or explanation as to how her treatment may potentially impact her RFC. Therefore, the Court cannot find a substantial likelihood of prejudice, and any error in failing to consider treatment needs was harmless.

/ / /

/ / /

22

**D.    Vocational Expert's Hypothetical**

Finally, Williams argues the ALJ failed to incorporate all her impairments and limitations into the hypothetical questions posed to the vocational expert.  The Commissioner counters that the ALJ properly accounted for Williams' credible limitations.

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'"  *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ adequately supported his reasons for discounting Williams' testimony and properly considered the medical opinion evidence.  Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Williams' limitations that the ALJ found to be supported by evidence in the record.

The Court, therefore, finds the ALJ's determination at step five is supported by substantial evidence.

## V.    Conclusion

Based on the foregoing, **IT IS ORDERED** that the Commissioner's

decision is **AFFIRMED**, and Williams' motion for summary judgment (Doc. 14)

is **DENIED**.

DATED this 20th day of May, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge